# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

RENELDA DAWN BURKS,                      ]
                                          ]
    Plaintiff,                        ]
                                          ]
vs.                                       ]      CV 97-N-2858-S
                                          ]
SOUTHERN RUBBER COMPANY,                  ]
INC.,                                     ]
                                          ]
    Defendant.                        ]

**ENTERED**

APR 2 2 1999

## Memorandum of Opinion

### I.   Introduction.

In this employment discrimination action the plaintiff, Renelda Dawn Burks ("Burks"), brings suit against her former employer, Southern Rubber Company, Inc. ("Southern Rubber") for violations of the Family and Medical Leave Act (FMLA), 28 U.S.C. § 2601 *et seq.*, the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* Specifically, Burks claims that she was terminated because she was required to be absent from work due to a medical problem and was replaced by a less-qualified male.

This matter is presently before the court on the defendant's motion for summary judgment, filed October 5, 1998. The issues have been briefed by both parties, and the motion is now ripe for decision. Upon due consideration, the motion will be granted.

## II.    Statement of Facts.[1]

Viewed in the light most favorable to the plaintiff, the evidence before the court on summary judgment suggests the following version of events. Dawn Burks was hired by Southern Rubber as assistant controller in September of 1990. In 1993, she was promoted to controller. For most of the time she spent in that position, Southern Rubber was apparently very pleased with her performance. She was given several merit raises, and the CEO of the company, Richard Abernethy, sent Ms. Burks cards and even flowers complimenting her on the job she was doing. *See Abernethy Depo.* at 74-79 and exhibits thereto. When Mr. Abernethy and his brother, the president of the company, eventually decided that some of their financial oversight responsibilities should be vested in a Director of Finance, Mr. Abernethy approached Burks about the new position. While the parties dispute whether a firm offer of promotion was made, the court will assume for summary judgment purposes that Abernethy told Burks the job was hers and even authorized her to go ahead and offer the controllership of the company to her assistant controller.[2] *See Burks Depo.* at 99, 107-09. Thus, at least at the end of 1995 when these conversations took place, the evidence indicates that the company held Ms. Burks in high esteem.

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund,* 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] Even Abernethy admits that based on their conversations Burks "should have been led to believe that if she continued to do her job, that she would be a candidate for that position." *Abernethy Depo.* at 33.

2

That all changed in the spring of 1996. On April 8th of that year Mr. Abernethy called Ms. Burks into his office and told her that she was being terminated. The central question in this case is a simple one: Why did the company change its opinion of Ms. Burks so quickly and so dramatically? Not surprisingly, the parties have different answers to this crucial question.

Ms. Burks claims that the change was caused by her medical condition and, perhaps, gender discrimination. The plaintiff had suffered for several years from a heart problem, specifically mitral valve prolapse complicated by mitral regurgitation. In early 1996, plaintiff's doctors determined that her condition had worsened and that mitral valve replacement surgery would be required. Ms. Burks advised Mr. Abernethy sometime in March that she had to undergo open heart surgery, that her surgery was scheduled for April 18, 1996, and that she would need to go on medical leave of absence on April 17, 1996. *Burks Depo.* at 77-80, 88. Ms. Burks requested an accommodation to work from her home while recuperating. Mr. Abernethy agreed to the accommodation. *Id.* However, on April 8, nine days before her scheduled surgery, he terminated her. Ms. Burks contends that Abernethy, who had prior experiences with family members and close friends who had heart problems and were unable to work effectively, decided not to take a chance on the results of her surgery and got rid of her.

Plaintiff further claims that the company took the opportunity to put a male in charge of its financial operations. Burks's assistant controller, Jenny Childers, took over the controllership. However, the company added a new Director of Finance position, and placed its occupant in overall control of the company's finances. Ms. Childers therefore

3

reported to the Director of Finance, Brad Gray, a newcomer to the company with little or

no experience in the defendant's industry.  Because a less-qualified male assumed some

of Burks's responsibilities for the financial management of Southern Rubber, Burks

suggested that the decision to terminate her was motivated in part by gender bias.

Mr. Abernethy, of course, offers a completely different explanation for his actions.

According to the defendant's evidence, Abernethy was informed in February of 1996 that

a crisis was brewing in Southern Rubber's accounting department.  Abernethy claims that

a supervisor in another department told him that the plaintiff's oppressive management

style and erratic behavior had shattered morale in accounting, which Burks supervised,

and that many of the accounting employees were planning on leaving.  According to

Abernethy, he investigated these charges by speaking with several accounting employees,

and was told that the allegations were true and the situation in accounting was dire.  By

affidavit, the supervisor and employees involved have confirmed that they lodged

complaints with him.  Abernethy contends that, after gathering this information, he fired

Burks to stave off the threatened exodus from the department. The resolution of the parties'

dispute hinges on the truth of this claim.[3]

---

[3] Abernethy also alleges that Burks failed to keep him informed of the trouble brewing in the department. He contends that she hid the discontent of the accounting personnel from him by directing her employees not to speak to him. According to Abernethy, the same policy of silence kept him from learning about some problems with the company's payment of its tax and insurance liabilities. While he does not view these problems as entirely her fault, Abernethy does claim that by hiding the problems from him Burks exacerbated their negative impact on the company. However, there is some disagreement between Burks and Abernethy regarding what she told him and when. The court will therefore ignore these allegations of wrong-doing for now and focus only on Abernethy's primary claim that Burks mismanaged the employees in accounting. The court notes that this one legitimate reason for Abernethy's actions, if it proves to be a real reason, is more than sufficient to defeat the plaintiff's case. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997) ("to avoid summary judgment a plaintiff must show that "there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of *each* of the employer's proffered reasons for its challenged actions") (emphasis added); *see also id.* at 1539.

4

### III.    Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Where the nonmoving party will bear the burden of proof at trial, there is no requirement, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323. "Instead, the moving party simply may '"show[ ]"'--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir.1991) (*en banc*) (quoting *Celotex*, 477 U.S. at 324); *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (same); *Young v. City of Augusta*, 59 F.3d 1160, 1170 (11th Cir. 1995). However, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must instead make an "affirmative showing" that crucial evidence is missing "by reference to any

5

combination of the following: pleadings; deposition testimony of a party or its witnesses; affidavits; responses to interrogatories . . . ; requests for admission . . . ; and any other exchanges between the parties that are in the record." *Cheatwood v. Roanoke Industries*, 891 F. Supp. 1528, 1533 (N.D. Ala. 1995) (Hancock, J.).

"Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Four Parcels of Real Property*, 941 F.2d at 1437-38 (11th Cir.1991).

At this stage, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Id.* at 324. The nonmoving party must make a specific, affirmative showing that a genuine factual dispute exists. If the required showing is not made, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

6

case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

After the plaintiff has responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254;

7

*Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.     The Mcdonnell Douglas Framework.

This case involves claims made under Title VII, the ADA, and FMLA based entirely on circumstantial evidence of discrimination.  The court's inquiry under all three statutes is therefore governed by the familiar framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Weigel v. Target Stores*, 122 F.3d 461, 465 (7th Cir. 1997); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1325 (10th Cir. 1997); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987); *Dollar v. Shoney's, Inc.*, 981 F. Supp. 1417, 1419 (N.D. Ala. 1997); *Kaylor v. Fannin Regional Hospital, Inc.*, 946 F. Supp. 988, 999 (N.D. Ga. 1996); *Peters v. Community Action Committee, Inc.*, 977 F. Supp. 1428 (M.D. Ala. 1997).

Under the *McDonnell Douglas* framework, a plaintiff seeking to establish a claim based on circumstantial evidence has the burden of establishing a prima facie case of discrimination. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring the defendant to articulate some "legitimate, nondiscriminatory

8

reason" for the allegedly discriminatory employment action. *Id.* "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather was a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original).

The plaintiff may prove that the defendant intentionally discriminated against him "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). However, "'to withstand a defendant's motion for summary judgment, a plaintiff has to do more than establish a prima facie case and deny the credibility of

9

defendant's witnesses.'" *Howard v. BP Oil Co.*, 32 F.3d 520 (11th Cir. 1994) (quoting *Brown*, 939 F.2d at 950). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). Plaintiff must instead "produc[e] sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable."[4] *Howard*, 32 F.3d at 526.

If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997). Because of the difficult factual questions involved in assessing "an employer's true motivations," once the plaintiff has presented evidence raising a question about those motivations summary judgment is ordinarily inappropriate. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If evidence in the record "demonstrate[s] 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's preferred legitimate reasons for its action that a legitimate factfinder could find them unworthy of credence,'"

---

[4]In other words, a defendant can carry its initial burden on summary judgment on the pretext issue by presenting extensive proof to support its legitimate nondiscriminatory reason. If the defendant can show that its preferred reason was the real reason, it need not prove a negative by showing that the plaintiff cannot prove pretext. Pretext and a legitimate reason are, after all, two sides of the same coin. Proof of one disproves the other.

the final assessment of the employer's motivation must be left to the jury. *Combs*, 106 F.3d at 1538.

## V.   Discussion.

Before delving into an extensive legal discussion, the court feels that it would be useful to sum up its conclusions from a practical perspective. In the court's view, all of plaintiff's claims suffer from the same simple, fatal flaw. There is not enough evidence in the record to prove intentional discrimination. The reason for plaintiff's termination is, in the end, what this case is all about. Given the evidence of record, the plaintiff cannot prove that she was fired for any reason other than her poor management of the accounting department. Summary judgment is therefore warranted as to each of plaintiff's claims.

This fundamental problem affects the elements of plaintiff's case in a number of ways. However, it is most apparent at the pretext stage of the *McDonnell Douglas* procedure, the stage at which the plaintiff must prove that the defendant did not act for the legitimate reason it claims, but acted instead based on forbidden discriminatory motives. Because the available evidence on this question is the same for all three of plaintiff's claims,[5] the pretext analysis will also be identical for each claim. The court will therefore

---

[5] The plaintiff bases her pretext argument for all three claims primarily on evidence relating to her heart condition, and in particular on evidence that Abernethy fired her when he did because of her upcoming surgery, not because of newly-discovered performance problems. While it may be easy to see how this evidence would support ADA and FMLA claims, the relevance of this evidence to Title VII requires a little more explanation. Plaintiff in fact offers little or no evidence of an intent to discriminate based on gender. Besides the "heavily predominately-male" nature of the tire industry and the fact that a male was ultimately hired as Director of Finance, plaintiff admits that she had no reason to believe that Abernethy fired her because she was a woman. *Burks Depo.* at 103-05. In fact, she does not even seem to really believe that this is what happened. Boiling her argument down to its roots, the plaintiff purports instead to state a Title VII claim by 1) proving that a male was hired to replace her; and 2) calling into question the legitimate reason offered by the defendant *by showing that the real reason was discrimination based on her heart condition.* This argument actually makes a strange kind of sense. Under existing Eleventh Circuit precedent, to state a claim under a discrimination statute a plaintiff need not actually prove that the type of discrimination forbidden by that statute affected the decision. Instead, the

11

focus its legal discussion on this element of the plaintiff's case, assuming for purposes of
discussion that the plaintiff could make out her prima facie case of a violation of each of
the statutes she sues under.

At the pretext stage of her case, Ms. Burks must present evidence to prove that the
defendant acted with the intent to discriminate against her, or at least that the reason given
by the defendant for its actions was not the real reason. The plaintiff bases her allegations
of pretext and/or intentional discrimination on three key types of evidence.[8] First, plaintiff
contends that Mr. Abernethy's personal experiences with sufferers of heart disease suggest
that he felt that her condition was serious and would affect her job performance. Second,
she claims that evidence of Southern Rubber's concerns over health care costs establish
that it would take action to eliminate workers with health risks. Finally, and probably most
importantly, Burks contends that the timing of the company's sudden shift from praise to
termination establishes that her surgery was the reason for the change. The court will
address each of these types of evidence in turn.

---

plaintiff can avoid summary judgment by showing that the reason given by the defendant was not the actual
reason for the challenged action, *regardless of what that actual reason was*. See *Combs v. Plantation Patterns*,
106 F.3d 1519 (11th Cir. 1997). Plaintiff thus might be able to proceed on her claim of gender discrimination if she
could prove that a *different* kind of discrimination may have motivated the decision. *See Evans v. McClain of
Georgia, Inc.*, 131 F.3d 957, 966-67 (11th Cir. 1997) (Limbaugh, J., concurring) (explaining this problem). As the
evidence before the court to prove intentional gender discrimination is virtually nonexistent, this is the only avenue
available for plaintiff to pursue her gender claim. Plaintiff's Title VII claims are therefore intertwined with her other
claims, and all must stand or fall on the same evidence. The court notes, as an aside, that it has seen an
increasing tendency among plaintiffs to seize upon the loophole outlined above and assert claims of
discrimination based on virtually every status protected by law. While the tactic may be technically feasible, the
court is dismayed by this development. Discrimination is not a generic concept. When people discriminate, they
discriminate for a *reason*. The court fondly wishes that plaintiffs would from time to time limit their suit to the
reason they actually think was involved, rather than throwing other claims into the lawsuit simply because they
can.

[8]While additional evidence has also been presented, plaintiff's principal arguments are based on the
evidence discussed below. The court has, however, reviewed the entire record and has satisfied itself that no
other evidence is worthy of extensive discussion.

12

## A. Abernethy's Experience with Heart Disease.

Mr. Abernethy has significant up close and personal experience with heart problems. Specifically, his father had a "very serious heart attack," was "very ill for about three years," and was never able to return to work on a full-time basis. *Abernethy Depo.* at 10-11, 28-29. Southern Rubber's former president, Chuck Hinton, also had extensive heart problems, was forced to reduce his responsibilities at the company, and ultimately died of heart disease. *Id.* Abernethy's wife suffered from mitral prolapse, the plaintiff's condition, and a good friend of Abernethy's had undergone an operation "similar" to the valve replacement Burks had scheduled. *Id.* at 32-36. Abernethy was thus clearly aware that heart disease could have serious ramifications. He indicated as much in his deposition:

> Q.    Well, you knew, didn't you, people with heart problems, that can drag on for awhile, right?
>
> A.    Sure.
>
> Q.    I mean, it did with your father?
>
> A.    Sure.
>
> Q.    And it did with Mr. Hinton, right?
>
> A.    Absolutely. . . .

*Id.* at 89. Plaintiff claims that this personal experience proves that Abernethy was concerned that her surgery would incapacitate her for a long period of time, and that this concern motivated her termination. The court cannot agree.

13

This evidence, while it might have some relevance to the case, is not a sufficient basis for a reasonable inference that Southern Rubber discriminated against the plaintiff because of her heart condition. Plaintiff essentially asks the court to construct the following chain of logic: 1) Abernethy's experience with heart problems led him to conclude that the plaintiff's problems could incapacitate her for a long time to come; 2) Abernethy wanted to get rid of employees with medical problems; and 3) for this reason he got rid of her. However, the fact that Abernethy may have had friends and family with heart problems is relevant only to the first link in this chain. This evidence might establish that Abernethy thought the plaintiff would be incapacitated for some time after her surgery, and might have some permanent functional limitations thereafter.[7] However, it does not prove that Abernethy would want to terminate her as a result of her problems.

Some perspective on plaintiff's argument can be gained by comparing her case with an analogous discrimination case based on race, gender, or religion. By proving that

---

[7] The court doubts that the evidence is a sufficient basis for even this inference. Plaintiff's argument seems to assume that one heart condition is the same as another. That is simply not true. Abernethy's father and Chuck Hinton apparently suffered from coronary artery disease, clogging in the arteries of the heart leading to myocardial infarctions or "heart attacks" in common parlance. While this condition admittedly resulted in a serious impairment for both men, the court has difficulty seeing the link between their experience and Burks, who suffered from an entirely different heart problem. Abernethy's wife, his friend, and Burks all suffered from valvular disease. There is no evidence to suggest that Abernethy confused the two types of heart conditions, nor is there evidence establishing that Abernethy's experience with valve disease of the type suffered by Burks was particularly traumatic. Indeed, while the record reveals that Abernethy's wife had mitral prolapse like Burks's, it does not indicate that she was prevented from working as a result. Likewise, though Abernethy predicted a slightly longer recovery time for Burks than she did, based on Abernethy's experience with his friend's similar surgery, this does not mean that his friend could not work after this time period or that Abernethy expected Burks to be unable to do so. Thus the court suspects that the evidence will allow at most an inference that Abernethy thought Burks would take sixty days to recover from her surgery, a fact which he freely admits. Nonetheless, these problems with the evidence are overshadowed by plaintiff's complete failure to prove the next step, that Abernethy fired Burks because of her condition. The court will not therefore make a final determination regarding the inferences to be drawn from plaintiff's evidence, nor will it rule on plaintiff's motion to strike, addressed to evidence relevant to this issue. That evidence, an affidavit in which Abernethy sets out his understanding of the difference between valvular disease and coronary artery disease and explains his experience with both, does not affect this court's analysis.

14

Abernethy regarded her as disabled and/or believed that she would require medical leave,

plaintiff has essentially established that she falls within a "disfavored" class protected by

statute, and that the defendant was aware of this status. But membership in a protected

class does not itself prove discrimination. The fact that employees are Black or White,

Korean or Indian, male or female, Protestant or Catholic, establishes only that they *might*

have been discriminated against, not that they were. The same is true of individuals with

medical problems. The law recognizes that members of protected groups are at risk for

discrimination, but it does *not* presume that individual employers are guilty of unlawful

discrimination without some proof of that fact. A discrimination plaintiff must therefore

present some proof that her employer was affected by a bias against people in her

situation. Abernethy's personal experiences with heart disease provide no such proof.[8]

## B.    Health Care Costs.

In an attempt to fill in this gap in her case, the plaintiff points to Southern Rubber's

concern over health care costs as a motive for terminating employees with health care

problems.[9] Specifically, plaintiff points to a letter from Southern Rubber's president to the

employees, which reads as follows:

---

[8] Such evidence in fact seems to suggest the opposite conclusion. The fact that Abernethy's friends and family suffer from heart problems might be expected to generate a certain amount of concern and sympathy on his part, not discriminatory bias. Indeed, the company apparently kept Mr. Hinton on in a reduced role despite his heart problems, creating a position for him in which he worked until shortly before his death.

[9] Plaintiff also offers testimony that a Southern Rubber manager told her that the company's president had ordered him to fire an obese employee because of concerns about the employee's future health problems. *Burks Depo.* at 137, 140-41. Defendant has moved to strike this evidence. As defendant points out, Burks's testimony is inadmissible hearsay. Moreover, Burks "do[es] not know" if the declarant still works for the defendant, *id.* at 140, and as far as the record reveals has made no attempt to contact him. Thus the court sees nothing to suggest that this evidence could be reduced to admissible form at trial. The court therefore concludes that it should not be considered in assessing defendant's motion for summary judgment. Defendant's motion will be granted.

15

... The results of our last year's health policy was not good. To make a long story short, we had way too much use of doctor visits which created approximately a <$35,000> loss for Blue Cross, Blue Shield on our overall health plan for Southern Rubber Company. Therefore, we will be incurring an increase in our premium rates as of April 1.

Again, this increase is due to the fact that our plan lost a good bit of money for our carrier, Blue Cross, Blue Shield, due basically to the fact that there was an over usage of doctors and doctor visits by our employees and, therefore, our rates are going up. To soften the increase, we have made some minor changes to the benefit program: the one that will affect you the most will be that we will change the copay from $15 to $20. I would encourage all of you not to use a doctor visit just when you *think* you are sick, use it only when you have to.

*Abernethy Depo. Exh. 5*; *see also Abernethy Depo.* at 83-85.

This letter does not establish that Southern Rubber intended to discriminate against its disabled employees. While the letter certainly suggests that Southern Rubber was concerned about its health care costs, the court suspects that the same could be said of virtually any employer. That does not imply that all employers are willing to eliminate disabled employees to bring costs down. Thus establishing a general concern over health care costs is not sufficient to prove discrimination. Nor does the letter suggest a more particular hostility towards employees with serious health problems. Indeed, the letter rather pointedly focuses on overuse of doctor visits by employees whose medical problems are *not* serious. Plaintiff clearly does not fall within this category, as her claim is based on the theory that the company regarded her as seriously impaired. Therefore the letter is not substantial evidence of an intent to discriminate against her.

16

## C.    Timing.

Plaintiff's entire case therefore rests on the timing of Abernethy's decision to terminate her. In fact, the court suspects that this unfortunate timing lies at the heart of the parties' entire dispute. Plaintiff's argument is a simple and understandable one. Burks claims that she was given extremely positive feedback on her performance, awarded raises and promotions, and promised a high-level executive position as the Director of Finance for the company. After she told Abernethy she was having surgery, however, she was soon thereafter terminated. According to the plaintiff, the timing of this sudden change in attitude had to have been more than mere coincidence – the two events must have been related. Therefore, she says a reasonable jury could infer unlawful discrimination.

Ordinarily, the court might agree. While timing alone is not usually sufficient to prove discriminatory intent, in some circumstances it comes close. Thus, in the retaliation context, the Eleventh Circuit has pointed out that proximity in time, if otherwise unexplained, allows a reasonable factfinder to infer that two events are related. *See EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1991)("the cumulative effect of these actions and their timing . . . was sufficient to meet the plaintiff's initial burden."); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1164 (11th Cir. 1993) ("[E]vidence that [the] employer knew of employees's protected activities, *combined with a proximity in time between protected action and the allegedly retaliatory action*, is sufficient to establish a prima facie case of retaliation.") (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)) (emphasis added); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600-01 (11th Cir. 1986). The same logic might apply here. Therefore the court suspects that an employee

17

could in some circumstances prove discriminatory intent by showing that she went from positive reviews to termination in a matter of weeks after her employer learned of health problems.

On the other hand, as Judge Propst of this court has pointed out, "the expiration of a short time alone can create an inference of a causal link" only if "there [is] no . . . intervening factor between the charge of discrimination and discharge." *Booth v. Birmingham News*, 704 F. Supp. 213, 215 (N.D. Ala. 1988). The presence of an intervening event breaks the causal chain and dissipates the inference of discrimination. That is just what happened here. The defendant has presented a clear and cogent explanation for the sudden change in Abernethy's opinion of Ms. Burks, and has backed that explanation with substantial evidence. The evidence indicates that Abernethy learned of serious problems with the plaintiff's job performance at about the same time as he was informed about her surgery. This evidence provides an alternative explanation for Abernethy's actions, negating the inference which can arise from unexplained coincidences of timing. Under these circumstances, timing alone is simply not sufficient to establish discriminatory animus.

## D.    Proof of Pretext.

Plaintiff can therefore prevail only if the evidence calls into question Abernethy's explanation for her termination. The record is bereft of any such evidence. Plaintiff does argue that Abernethy had always been happy with her performance before, but this proves nothing if, as he claims, Abernethy was not informed of the problems in the accounting

18

department until shortly before Burks was terminated.[10] Plaintiff points to no evidence in the record establishing that Abernethy did not receive such information, and the defendants have offered testimony from several witnesses indicating that he did. Therefore there is no real dispute over the fact that serious charges were brought to Abernethy's attention just prior to the plaintiff's termination.[11] These charges provide an entirely reasonable explanation for Abernethy's decision to terminate Burks.

The record does not contain "sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Howard*, 32 F.3d at 526. Summary judgment is therefore warranted as to all of plaintiff's claims.

---

[10]Plaintiff seems to suggest that, given the small size of Southern Rubber's offices and Abernethy's open door policy, he should have discovered any problems earlier. If plaintiff means to suggest that the jury could infer that Abernethy did know of the problems in accounting previously but waited to act until he learned about Burks's surgery, the court is not persuaded. The defendant has offered testimony that Abernethy was unaware of the employees' complaints in part because accounting personnel were scared to discuss the matter with him. No evidence contradicts these assertions. Under these circumstances, and without more evidence, the court does not believe that the arrangement of the defendant's offices is enough to allow an inference that Abernethy was aware of the accounting employees' complaints.

[11]The court notes that it does not matter whether these charges were in fact true. "The law is clear that, even if a Title VII claimant did not in fact commit the violation with which [s]he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation." *Jones v. Gerwen*, 874 F.2d 1534, 1540 (11th Cir. 1989). The plaintiff has not presented the court with any evidence which calls into doubt Abernethy's honesty in assessing the situation.

19

## VI.    Conclusion.

Accordingly, the defendant's motion for summary judgment will be granted. The

court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this $2\hbar\mathcal{U}$ of April, 1999.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE